**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE BROILER CHICKEN ANTITRUST LITIGATION <br><br> This Document Relates To: ALL CASES | No. 1:16-cv-08637 <br><br> Hon. Thomas M. Durkin <br> Magistrate Judge Jeffrey T. Gilbert |

**CLASS PLAINTIFFS' RESPONSE TO MOTIONS FOR PROTECTIVE ORDER**
**REGARDING DOCUMENTS PRODUCED TO THE DEPARTMENT OF JUSTICE**

Direct Purchaser Plaintiffs, Commercial and Institutional Indirect Purchaser Plaintiffs, and End-User Consumer Plaintiffs (collectively, "Class Plaintiffs"), by and through their undersigned counsel, hereby respond to United States' Motion for a Protective Order for Document Requests and Deposition Topics Intruding on Grand Jury Secrecy (Doc. 3432) and Defendants' Motion for a Protective Order (Doc. 3434). Class Plaintiffs also seek an order requiring Defendants to produce all relevant, nonprivileged documents provided to the United States Department of Justice ("DOJ"). In support, Class Plaintiffs state the following:

**INTRODUCTION**

Class Plaintiffs have vigorously prosecuted this case for more than three years to prove their allegations that Defendants conspired to artificially fix and maintain the price of Broilers sold in the United States in violation of the federal and state antitrust laws. For the vast majority of that time, they did so without the existence of a parallel criminal investigation by the DOJ into Defendants' anticompetitive conduct. However, nearly three years into this litigation, the DOJ intervened and obtained a stay of most fact discovery of Defendants. The DOJ's own statements, and the stay itself, indicate that there is a very substantial overlap between this case and its criminal investigation. It is therefore highly likely that the documents Defendants produced to the DOJ are relevant to this case and responsive to Class Plaintiffs' written discovery requests. For the reasons

set forth below, Class Plaintiffs are entitled to relevant, nonprivileged documents produced to the DOJ that are not protected from disclosure.

## ARGUMENT

### A. It is Well-Settled that Plaintiffs' Requests for the Underlying Business Records Do Not Implicate Rule 6(e) or Grand Jury Secrecy

Class Plaintiffs seek only the production of pre-existing business documents that have been produced to the Department of Justice or grand jury, that have not yet been produced in civil discovery. Plaintiffs do not seek the testimonial transcripts of the grand jury proceedings. Plaintiffs agree they will not question witnesses on the substance of their testimony before the grand jury. Class Plaintiffs request these documents not to discover the direction of the grand jury, but to assist them in prosecuting their civil claims. Case law clearly supports the production of these materials.

The protections of Rule 6(e) of the Federal Rules of Criminal Procedure apply only to "matter[s] occurring before the grand jury." Fed. R. Crim. P. 6(e)(2)(B). The Rule itself is intended "to protect against disclosure of what is said or takes place in the grand jury room." *In re Optical Disk Drive Antitrust Litig.*, 801 F.3d 1072, 1077 (9th Cir. 2015) (quoting *United States v. Interstate Dress Carriers, Inc.,* 280 F.2d 52, 54 (2d Cir. 1960)). As the Ninth Circuit explained in the *Optical Disk Drive Antitrust Litigation*—there, allowing the civil plaintiffs access to recordings made by a conspirator while cooperating with the FBI—"it is not the purpose of the Rule to foreclose from all future revelation to proper authorities the same information or documents which were presented to the grand jury." *Id.*

Courts have made a clear demarcation between the production of the grand jury testimonial transcripts and pre-existing business documents. Most courts to address the issue have found that a pre-existing business document that happens to be produced to grand jury is not protected from disclosure in civil litigation. *See, e.g.*, *In re Optical Disk Drive Antitrust Litig.*, 801 F.3d at 1077

("the grand jury's deliberative process in that case would not be compromised by the disclosure of business records that predated the grand jury investigation."); *United States v. Dynavac, Inc.*, 6 F.3d 1407, 1412 (9th Cir. 1993) (business records previously submitted to grand jury as part of criminal investigation but created for purposes independent of grand jury proceeding were not matters occurring before the grand jury); *In re Grand Jury Subpoena (Under Seal)*, 920 F.2d 235, 241–43 (4th Cir. 1990) (business records produced pursuant to search warrants in criminal investigation not related to parallel grand jury investigation, and not protected by Rule 6(e)); *United States v. Phillips*, 843 F.2d 438, 441 (11th Cir. 1988) (financial documents obtained via grand jury subpoena but not submitted to grand jury were not matters occurring before grand jury); *Anaya v. United States*, 815 F.2d 1373, 1379–80 (10th Cir. 1987) (summaries of witness interviews conducted by FBI agents outside of grand jury proceedings were not "grand jury material"); *In re Grand Jury Matter*, 682 F.2d 61, 64–65 (3d Cir. 1982) (product of an FBI investigation, including recordings and transcripts, not grand jury materials under Rule 6(e)); *see also In re Auto Parts Antitrust Litig. (Wire Harness)*, No. 12-md-02311, Doc. 201 (E.D. Mich. July 10, 2012) (Initial Discovery Plan) (ordering the production of business records that were provided to the DOJ); *accord In re Vitamin Antitrust Litig.*, No. MC 99-197, 2002 WL 35021999, at *40 (D.D.C. Jan. 23, 2002) (ordering production of all documents produced to investigative authorities in the United States).

At bottom, the court must determine whether the requested document is a "matter occurring before the grand jury." *United States v. Stanford*, 589 F.2d 285, 291 (7th Cir. 1978). Only those documents that constitute "matters occurring before the grand jury" are entitled to the protections of Rule 6(e). *Matter of Grand Jury Proceedings, Miller Brewing Co.*, 687 F.2d 1079, 1089 (7th Cir. 1982), *on reh'g*, 717 F.2d 1136 (7th Cir. 1983) (superseded by statute on other grounds)

(citations omitted). Stated differently, "the policy of secrecy and required showing of particularized need for disclosure of grand jury material applies only to 'matters occurring before the grand jury.'" *Id.* The Seventh Circuit explained the difference between documents subpoenaed and examined by a grand jury and "matters occurring before the grand jury":

> Unless information reveals something about the grand jury proceedings, secrecy is unnecessary . . . . Unlike testimony, documents are created for purposes other than the grand jury investigation; they are therefore more likely to be useful for purposes other than revealing what occurred before the grand jury.

*Stanford*, 589 F.2d at 291. The *Stanford* court therefore noted that when a party has a legitimate interest in documents for their own sake, "disclosure to them does not constitute disclosure of matters occurring before the grand jury." *Id.*

The Seventh Circuit established the following test for determining whether documents are matters occurring before the grand jury:

> The principle has . . . emerged that "matters occurring before the grand jury" do not include every document of which the grand jury happens to have custody. If a document is sought for its own sake rather than to learn what took place before the grand jury, and its release will not seriously compromise the secrecy of the grand jury deliberations, Rule 6(e) does not forbid its release.

*In re High Fructose Corn Syrup Antitrust Litig.*, 79 F. Supp. 2d 959, 962 (C.D. Ill. 1999) (quoting *Matter of Special Mar. 1981 Grand Jury*, 753 F.2d 575, 578 (7th Cir. 1985) (superseded by rule on other grounds)). "[I]f this test is met by the party seeking information or documents that were in the grand jury's custody, the information sought need not meet one of the exceptions for disclosure listed in Rule 6(e)(3)." *In re High Fructose Corn Syrup Antitrust Litig.*, 79 F. Supp. 2d at 962–63. Documents sought for their own sake—for their intrinsic value and usefulness for other legitimate purposes like a civil lawsuit—may be released for those purposes. *See Miller Brewing*, 687 F.2d at 1089 (quoting *United States v. Interstate Dress Carriers, Inc.*, 280 F.2d 52, 54 (2d Cir. 1960)); *In re Special Feb., 1975 Grand Jury*, 662 F.2d 1232, 1244 (7th Cir. 1981), *aff'd sub nom.*

*United States v. Baggot*, 463 U.S. 476 (1983); *see also United States v. Phillips*, 843 F.2d 438, 441 (11th Cir. 1988) (holding that financial records obtained pursuant to a grand jury subpoena but not seen by the grand jury were not "matters occurring before a grand jury" and thus not subject to the secrecy provisions of Rule 6(e)); *United States v. Lartey*, 716 F.2d 955, 964 (2d Cir. 1983) ("[D]ocuments are not cloaked with secrecy merely because they are presented to a grand jury").

Here, Class Plaintiffs seek only pre-existing business documents relevant to the parties' claims and defenses for the prosecution of their case. They are not seeking transcripts of grand jury proceedings or documents that were created for the grand jury investigation. And they have agreed to refrain from asking questions at deposition relating to what has transpired before the grand jury. This should limit the concern by the Defendants—a concern that is a red-herring in any event—that Plaintiffs merely seek these documents as part of some fishing expedition. It should also limit their concern, which they repeatedly state, that such documents are being sought in order to assert new causes of action that are wholly unrelated to Defendants' anticompetitive conduct. They are not being sought for this purpose. Because Class Plaintiffs have a legitimate interest in these documents, they are not "matters occurring before the grand jury." Additionally, neither the DOJ nor Defendants have demonstrated that the documents Class Plaintiffs seek would compromise the integrity of the grand jury's process. Thus, Rule 6(e) does not preclude the disclosure of these documents.

### B. Courts Routinely Order Production of Documents to the Civil Plaintiffs that Defendants Produced to the Government

Defendants act as if Class Plaintiffs' request for the documents they produced to the DOJ documents is somehow novel or unique. It is not. Courts routinely order production of these documents in antitrust litigation. *See, e.g.*, *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 899–900 (N.D. Cal. 2008) (describing previous case management

order requiring production of DOJ documents prior to resolution of the motion to dismiss); *In re Lithium Ion Batteries Antitrust Litig.*, No. 4:13-md-02420, 2013 WL 2237887, at \*\*1–4 (N.D. Cal. May 21, 2013) (ordering production of documents previously provided to the DOJ or any grand jury); *In re Resistors Antitrust Litig.*, No. 3:15-cv-03820, Doc. 112 (N.D. Cal. Feb. 2, 2016) (Order) ("All DOJ documents are to be voluntarily produced to Plaintiffs by 4/29/2016."); *In re Dynamic Random Access Memory (DRAM)*, No. 4:02-md-01486, Doc. 89 (N.D. Cal. April 16, 2003) (Stipulation and Order) (requiring production of all grand jury documents, including DOJ documents); *In re Pharmaceutical Industry Average Wholesale Price Litigation*, No. 1:01-cv-12257, Doc. 161 (D. Mass. Oct. 28, 2002) (Case Management Order No. 5) (ordering defendants to produce documents "previously produced by a defendant to any federal or state executive or legislative agency or entity in connection with any investigation"); *In re Lithium Ion Batteries Antitrust Litig.*, No. 4:13-md-02420, Doc. 502 (N.D. Cal. Aug. 8, 2014) (Aug. 8, 2014 Hr'g Tr. at 83:1–2) (stating, in response to defense counsel's suggestion that production of DOJ documents during an early phase of the case was "unusual," "Well, not according to all the district judges I spoke to at the last MDL conference, but go ahead.").

Class Plaintiffs agree with the DOJ's position that "just because [a document] was produced to us doesn't somehow immunize it from being produced if it's relevant to a claim or defense." (Ex. A, June 27, 2019 Hr'g Tr. at 30:25–31:2.) This is consistent with the precedent in antitrust cases of turning over documents originally produced to the DOJ in conjunction with a criminal investigation that are relevant to the civil litigants' claims. For example, in *Kleen Prod. LLC v. Packaging Corp. of Am.*, the district court ordered the defendants to produce deposition and interview transcripts taken during the DOJ's investigation, stating that the "question of relevancy [ ] usually is not all that important for discovery." *Kleen Prod. LLC v. Packaging Corp.*

*of Am.*, No. 1:10-cv-05711, Doc. 820 (N.D. Ill. Dec. 10, 2014) (Dec. 10, 2014 Hr'g Tr. at 5:4–5). And the district court in *In re Ry. Indus. Emp. No-Poach Antitrust Litig.* required the defendants to turn over "all United States-sourced material produced to the DOJ in conjunction with the government's investigation of Defendants' alleged no-poach agreements." *In re Ry. Indus. Emp. No-Poach Antitrust Litig.*, 2:18-mc-00798, MDL No. 2850, Doc. 148 (W.D. Pa. Dec. 21, 2018) (Scheduling Order at 1).

### C. The Documents Are Relevant to Plaintiffs' Claims, as is Evident from the Broad Overlap Between the Civil Case and the DOJ Investigation

Class Plaintiffs pursue production of these documents in support of their claims that Defendants—purported competitors—colluded with each other in the production and sale of Broilers in a manner and with the intent to inflate prices and thereby harm the class members. Class Plaintiffs reasonably expect that many of the documents Defendants produced to the DOJ are relevant to the parties' claims and defenses because there is every indication that the DOJ investigation overlaps with this case. Defendants' contention that Class Plaintiffs' goal in obtaining documents produced to the DOJ to search for "new claims" is misplaced. (Doc. 3545 at 11.)

In April 2019, the DOJ served subpoenas on Class Plaintiffs seeking all discovery produced in this litigation. (*See* Ex. B, Clark Decl. at ¶ 2.) Two months later, on June 21, 2019, the DOJ moved to intervene in this case and stay discovery. (Doc. 2268.) One of the factors cited by the DOJ, which it argued weighed in favor of staying discovery, was "whether the civil and criminal matters overlap." (*Id.* at 6) (citing *Cruz v. City of Chicago*, No. 08-cv-02087, 2011 WL 613561, at *2 (N.D. Ill. Feb. 15, 2011); *Clark v. Djukic*, No. 14-cv-00160, 2014 WL 6674610, at **1–2 (N.D. Ind. Nov. 25, 2014) (Cherry, M.J.)).)

The DOJ itself declared that in this case "there is **very substantial overlap** between the civil and criminal matters." (Doc. 2268 at 7) (emphasis added). At its June 27, 2019 hearing on the DOJ's initial motion for a stay, the Court granted the DOJ a three-month stay (Doc. 2302), and warned that "absent something that I can't anticipate right now, that will be the only extension," and cautioning that the DOJ is "going to have to present a very compelling reason for me to extend the stay." (Ex. A, June 27, 2019 Hr'g Tr. at 33:12–14, 34:8–9; Doc. 3153.) Toward the end of the original three-month stay, the DOJ moved to extend the stay for an additional six months (Doc. 3093), and the Court extended the stay for an additional nine months. As the Court noted in its October 16, 2019 Order, its decision was based on ex parte meetings between the Court and the DOJ attorneys, as well as "an additional ex parte written submission detailing the government's investigation **and its relationship to discovery in this case**." (Doc. 3153 at 1–2) (emphasis added). While the length of the stay was later reduced to nine total months, the Court ordered the DOJ to "submit monthly ex parte written reports to the Court to allow the Court to monitor the progress of the government's investigation **and its relationship to this case**." (Doc. 3356 at 3) (emphasis added). Clearly, the overlap between the DOJ investigation and this case played a role in the Court's decision on the scope and duration of the stay of Defendant discovery.

In sum, the DOJ's subpoenas to Class Plaintiffs, the DOJ's own admission of substantial overlap, the nine-month discovery stay, and the Court's decision to monitor the DOJ investigation and its relationship to this case strongly indicate that the scope of the DOJ investigation overlaps with Class Plaintiffs' allegations. That being the case, it stands to reason that the documents sought by the DOJ and produced to it by Defendants are relevant to the parties' claims and defense in this litigation.

**D. Class Plaintiffs Are Entitled to Relevant, Nonprivileged Documents Produced to the DOJ That Are Responsive to Their Written Discovery Requests**

Federal Rule of Civil Procedure 26(b) authorizes "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). The requested information "need not be admissible in evidence" to be relevant. Fed. R. Civ. P. 26(b)(1). This is because "discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues." *Oppenheimer*, 437 U.S. at 351; *accord Grayson v. City of Aurora*, No. 1:13-cv-01705, 2013 WL 6697769, at *6 (N.D. Ill. Dec. 19, 2013); *Jenkins v. White Castle Mgmt. Co.*, No. 1:12-cv-07273, 2013 WL 5663644, at *2 (N.D. Ill. Oct. 17, 2013). Nor is it "limited to the merits of a case, for a variety of fact-oriented issues may arise during litigation that are not related to the merits." *Oppenheimer*, 437 U.S. at 351.

In antitrust cases, courts have expressed a specific need for broad discovery, particularly in conspiracy actions like this, where "the proof is largely in the hands of the alleged conspirators." *Hosp. Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738, 746 (1976); *accord Kleen Prod. LLC v. Packaging Corp. of Am.*, No. 1:10-cv-05711, 2012 WL 4498465, at *14 (N.D. Ill. Sept. 28, 2012), *objections overruled*, No. 1:10-cv-05711, 2013 WL 120240 (N.D. Ill. Jan. 9, 2013) ("In antitrust cases, courts generally take an expansive view of relevance and permit broad discovery.") (citations omitted); *Callahan v. A.E.V. Inc.*, 947 F. Supp. 175, 179 (W.D. Pa. 1996) ("Discovery in an antitrust case is necessarily broad because allegations involve improper business conduct. Such conduct is generally covert and must be gleaned from records, conduct, and business relationships.") (internal citation omitted). Discovery must still be "proportional to the needs of

the case." Fed. R. Civ. P. 26(b)(1). In determining the needs of the case, a court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

**<u>The importance of the issues</u>**: Class Plaintiffs allege that Defendants conspired, combined, or agreed to fix prices, reduce output, limit production, limit capacity, limit supplies, limit inventories, or allocate customers, product lines or territories for Broilers sold in the United States. If the documents produced to the DOJ pertain to anticompetitive conduct in the Broiler industry during the class period (January 1, 2008 to the present) that harmed the class members, then they are relevant to Class Plaintiffs' cases.[1] And if those relevant documents are responsive to Class Plaintiffs' written discovery requests, then Class Plaintiffs are entitled to them.

The documents are relevant even if they demonstrate prior or ongoing anticompetitive conduct in the same or related products or markets. *See, e.g.*, *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 661 (7th Cir. 2002) (deeming relevant evidence that a defendant "conceded to have fixed prices on related products (lysine and citric acid) during a period overlapping the period of the alleged conspiracy to fix the prices of high fructose corn syrup."); *In*

---

[1] Even if the DOJ investigation focuses on seemingly separate conduct, there may be substantial overlap with Class Plaintiffs' claims, as the DOJ itself has indicated is the case here. For example, in instances where the DOJ investigates prospective mergers and consolidation in an industry, the subject of such an investigation encompasses past competitive conditions, including analyzing "coordinated interaction among firms in the relevant market." (Ex. C, *U.S. Dep't of Justice and the Fed'l Trade Comm'n Horizontal Merger Guidelines*, at §§ 7, 7.2.) They also state, "The Agencies typically obtain substantial information from the merging parties . . . [that] consist of descriptions of competitively relevant conditions or reflect actual business conduct and decisions." (*Id.* at § 2.2.1.) The documents thus produced to the DOJ in this circumstance would include information relevant to Class Plaintiffs' claims in this case and covered by their written discovery requests.

*re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 903 (N.D. Cal. 2008) (recognizing that allegations relating to existence of a conspiracy in the DRAM industry "support an inference of a conspiracy in the SRAM industry."). Prior acts are also relevant for showing absence of mistake and to explain aspects of collusive activities. *See U.S. v. Andreas*, 216 F.3d 645, 664–65 (7th Cir. 2000) (finding that evidence of the citric-acid conspiracy was relevant to certain aspects of the conspiracy to fix the global price and allocate the sales volume of lysine).

**The amount in controversy**: The amount in controversy in this case is significant. As Judge Gilbert previously recognized, this litigation involves allegations that Defendants conspired to artificially inflate and maintain the price of Broilers in the United States, claims that raise vital issues of public importance. *In re Broiler Chicken Antitrust Litig.*, No. 1:16-cv-08637, 2018 WL 3586183, at *8 (N.D. Ill. July 26, 2018). Moreover, given the popularity of chicken nationwide, "this litigation involves a massive amount of commerce in the United States during the class period." *Id. See also Kleen Prod. LLC*, 2012 WL 4498465, at *14 (highlighting that "claims of collusion in the containerboard and corrugated box industries raise important, vital issues of public importance.").

**Unequal access to information**: Regarding access to the relevant information, this factor weighs in Class Plaintiffs' favor. The DOJ has stated that the scope of its investigation and this civil litigation overlap very substantially. Defendants have access to the documents Class Plaintiffs seek, while Class Plaintiffs have none. Restricting Class Plaintiffs' access to relevant evidence will thus significantly prejudice them.

**Unequal resources**: As for the parties' respective resources, Defendants' resources greatly exceed those of Class Plaintiffs. But this factor is not even particularly relevant here because the documents Class Plaintiffs seek—relevant, responsive, and nonprivileged documents—were

already collected, reviewed, and produced by Defendants to the DOJ. Their likely benefit—evidence of a continuing antitrust conspiracy, an issue of public importance—outweighs any burden or expense of production.

**E. Turning Over Relevant Documents Produced to the DOJ Would Not Place an Undue Burden on Defendants**

Prior to the commencement of the DOJ investigation, Defendants agreed to search for and produce documents relating to antitrust investigations in response to Rule 34 requests. (*See, e.g.*, Ex. B, Clark Decl. at ¶ 3, Summary of Wayne Farms' Agreed-Upon Offers of Production in Response to Plaintiffs' Requests for Production, No. 34 at 12) ("Wayne Farms will conduct a Custodian Search for all responsive, non-privileged Documents produced by Wayne Farms to a government agency or regulator in connection with any antitrust investigation . . . ."). Moreover, the Court has previously ordered that Defendants produce to Plaintiffs documents that were turned over to the Florida Attorney General relating to anticompetitive conduct in the Broiler industry. There, Plaintiffs requested that, prior to the Court's ruling on Defendants' motions to dismiss, certain Defendants produce documents they previously provided to the Office of the Florida Attorney General ("Florida AG") in connection with its investigation into anticompetitive conducted in the Broiler industry. (Doc. 489 at 1.) Defendants argued that Plaintiffs request was unreasonable and not proportional to the needs of the case. (*Id.* at 4.) They contended that some of the documents may not be relevant if the Court grants in part or in whole the motions to dismiss. (*Id.* at 5.) In evaluating whether to order the requested production, this Court observed there was "overlap between the Florida AG's document requests, the allegations in Plaintiffs' operative complaints, and the categories of documents covered by Plaintiffs' First Set of Requests for Production of Documents to All Defendants." (*Id.* at 8.) And it recognized that the documents produced in response to a subset of the Florida AG's document requests "appear to be relevant to

the claims and defenses in this case." (*Id.* at 8, 11.) This Court further reasoned that the benefit to Plaintiffs in obtaining these documents outweighed "the incremental expense and burden to CID Defendants of producing these documents which they already have produced to the Florida AG." (*Id.* at 13.) Ultimately, this Court ordered certain Defendants to produce to Plaintiffs the documents provided to the Florida AG in response to the relevant subset of its document requests. (*Id.* at 14–15.)

These principles and agreements should apply with equal force to the production of DOJ documents. Under Rule 26(c), a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The party seeking the protective order has the burden to show good cause. *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994). "The party opposing a motion to compel [discovery] carries a 'heavy' burden of persuasion" and must set forth specific facts to justify their refusal to produce documents, based on their claim of undue costs or burden. *Kleen Prod. LLC*, 2012 WL 4498465, * 13. "Conclusory statements of hardship are not sufficient to carry this burden." *Johnson v. Jung*, 242 F.R.D. 481, 483 (N.D. Ill. 2007) Defendants have not met their burden here.

As several courts have held, the burden on defendants "is slight when a defendant has already found, reviewed and organized documents." *In re Bank of Am. Corp. Sec., Derivative & Emp. Ret. Income Sec. Act (ERISA) Litig.*, MDL No. 2058, 2009 WL 4796169, at *2 (quoting *Waldman v. Wachovia*, No. 08-cv-2913, 2009 WL 86763, at *2 (S.D. N.Y. 2004)) (internal quotation marks omitted); (citing *In re LaBranche Sec. Litig.*, 333 F. Supp. 2d 178, 183 (S.D.N.Y. 2004); *In re Enron Corp. Sec., Derivative & "Erisa" Litig.*, No. CIV. A. H-01-3624, 2002 WL 31845114, at *1 (S.D. Tex. Aug. 16, 2002)). Here, Defendants have already searched, collected,

and produced the documents in dispute to the DOJ. Given that these documents may evidence a continuing antitrust conspiracy, their likely benefit outweighs the minimal burden or expense of reproducing them.

As for Defendants' other burden arguments, they are either speculative or overstated. For example, Defendants argue they will need to "spend hundreds of costly hours preparing for the re-opening of completed 30(b)(1) Defendant depositions." (Doc. 3435 at 13.) But at this juncture, the number of Rule 30(b)(1) Defendant depositions that Class Plaintiffs will seek to reopen is unknown. In addition, Defendants' position necessarily puts the cart before the horse; Class Plaintiffs do not even have the documents Defendants apparently believe will lead to reopening of depositions. Approximately 100 Rule 30(b)(1) Defendant depositions remain once the stay lifts, and those depositions may obviate the need to reopen completed 30(b)(1) depositions. Defendants also contend that disclosure of relevant documents they produced to the DOJ will necessitate answers to another round of amended complaints. (*Id.*) But as discussed in court on January 17, 2020, Defendants have not answered the last versions of Class Plaintiffs' complaints, which they will need to do regardless of whether Class Plaintiffs amend their complaints. (Ex. D, Jan. 17, 2020 Hr'g Tr. at 19:16–20:7.) Moreover, the parties are working toward a solution that will minimize the burden of responding to amended complaints. (*Id.* at 20:12–26:3.)

## <u>CONCLUSION</u>

WHEREFORE, for these reasons, Direct Purchaser Plaintiffs, Commercial and Institutional Indirect Purchaser Plaintiffs, and End-User Consumer Plaintiffs respectfully request that this Court deny United States' Motion for a Protective Order for Document Requests and Deposition Topics Intruding on Grand Jury Secrecy, deny Defendants' Motion for a Protective

Order, and order Defendants to produce to Class Plaintiffs all relevant, nonprivileged documents provided to the United States Department of Justice.

Dated: February 7, 2020

W. Joseph Bruckner
Elizabeth R. Odette
Brian D. Clark
Simeon A. Morbey
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
T:  (612) 339-6900
F:  (612) 339-0981
wjbruckner@locklaw.com
erodette@locklaw.com
bdclark@locklaw.com
samorbey@locklaw.com

Bruce L. Simon
Neil Swartzberg
PEARSON, SIMON & WARSHAW, LLP
350 Sansome Street, Suite 680
San Francisco, CA 94104
T: (415) 433-9000
F:  (415) 433-9008
bsimon@pswlaw.com
nswartzberg@pswlaw.com

Clifford H. Pearson
Daniel L. Warshaw
Michael H. Pearson
Bobby Pouya
PEARSON SIMON & WARSHAW, LLP
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 92403
T: (818) 788-8300
F: (818) 788-8104
cpearson@pswlaw.com
dwarshaw@pswlaw.com
mpearson@pswlaw.com
bpouya@pswlaw.com

***Direct Purchaser Plaintiffs Interim Co-Lead Class Counsel***

s/ *Steven A. Hart*
Steven Hart (#6211008)
Brian Eldridge (#6281336)
John Marrese (#6306516)
Kyle Pozan (#6306761)
HART MCLAUGHLIN & ELDRIDGE, LLC
22 West Washington Street, Suite 1600
Chicago, IL 60602
T: (312) 955-0545
F: (312) 971-9243
shart@hmelegal.com
beldridge@hmelegal.com
jmarrese@hmelegal.com
kpozan@hmelegal.com

***Direct Purchaser Plaintiffs Interim Liaison Class Counsel***

s/ *Kenneth A. Wexler*
Kenneth A. Wexler
Edward A. Wallace
WEXLER WALLACE LLP
55W.Monroe Street, Suite 3300
Chicago, IL 60603
T: (312) 346-2222
kaw@wexlerwallace.com
eaw@wexlerwallace.com

***Commercial and Institutional Indirect
Purchaser Plaintiffs Liaison Counsel***

Daniel E. Gustafson
Daniel C. Hedlund
Michelle J. Looby
Joshua R. Rissman
Brittany N. Resch
GUSTAFSON GLUEK PLLC
220 South Sixth Street, #2600
Minneapolis, MN 55402
T: (612)333-8844
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
jrissman@gustafsongluek.com
bresch@gustafsongluek.com

Joseph W. Cotchett
Adam Zapala
Tamarah Prevost
COTCHETT, PITRE & MCCARTHY, LLP
840 Malcolm Road, Suite 200
Burlingame, CA  94010
T: (650) 697-6000
jcotchett@cpmlegal.com
azapala@cpmlegal.com
tprevost@cpmlegal.com

***Commercial and Institutional Indirect
Purchaser Plaintiffs Interim Co-Lead
Counsel***

s/ *Shana E. Scarlett*
Shana E. Scarlett
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
T: (510) 725-3000
shanas@hbsslaw.com

Steve W. Berman (*pro hac vice*)
1301 Second Avenue, Suite 2000
HAGENS BERMAN SOBOL SHAPIRO LLP
Seattle, Washington 98101
T: (206) 623-7292
steve@hbsslaw.com

*Interim Lead Counsel for End-User Consumer Plaintiffs*

Kit A. Pierson
Brent W. Johnson
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Ave. NW
Suite 500, West Tower
Washington, DC 20005
T: (202) 408-4600
kpierson@cohenmilstein.com
bjohnson@cohenmilstein.com

Daniel H. Silverman
COHEN MILSTEIN SELLERS & TOLL, PLLC
190 South LaSalle Street, Suite 1705
Chicago, IL 60603
T: (312) 357-0370
dsilverman@cohenmilstein.com

*Additional Counsel for End-User Consumer Plaintiffs*

**CERTIFICATE OF SERVICE**

I, Steven A. Hart, depose and state that I have served a copy of Class Plaintiffs' Response to Motions for Protective Order Regarding Documents Produced to the Department of Justice upon all counsel of record via the United States Court for the Northern District of Illinois CM/ECF Document Filing System on February 7, 2020.

By: s/ *Steven A. Hart*

[x]  As provided by law pursuant to Rule 5(b) of Fed. Rules of Civil Procedure, I certify that the statements set forth herein are true and correct.